HARVEY FRICTION SPRING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4334, 10119. Promulgated March 29, 1928.

*E. Barrett Prettyman, Esq.,* and *Karl D. Loos, Esq.,* for the petitioner.

*Thos. P. Dudley, Jr., Esq.,* for the respondent.

## OPINION.

Love: Section 200 of the Revenue Act of 1918 defining a personal service corporation sets forth four conditions, all of which must concur to entitle a corporation to classification thereunder, and these conditions are each a question of fact. *Bryant & Stratton Commercial School, Inc.*, 1 B. T. A. 32; *Scheffler Hair Colorine Co.*, 1 B. T. A. 61.

The conditions which must be concurrently met by a corporation in order to entitle it to personal service classification are: (1) Its income is to be ascribed primarily to the activities of the principal owners or stockholders; (2) the principal owners or stockholders

must be engaged in the active conduct of the affairs of the corporation; (3) capital (whether invested or borrowed) must not be a material income-producing factor; (4) must not be a foreign corporation, or any corporation 50 per cent or more of whose gross income consists of gains, profits, or income derived from trading as a principal, etc.

Petitioner is and was a domestic corporation and also met the other requirements of the fourth condition above enumerated. Our inquiry, therefore, is limited to the questions as to whether its income was derived primarily from the activities of its principal stockholders who were regularly engaged in the active conduct of its affairs and whether capital was a material income-producing factor. In this connection, petitioner contends that its income was, during the years in question, ascribable primarily to the activities of Harvey, who was its principal stockholder, owning 649 shares of its capital stock of 1,000 shares, and who was regularly engaged in the conduct of its affairs. It further contends that capital was not a material income-producing factor. The Commissioner, on the other hand, denies both of these contentions and urges that petitioner does not come within the terms of the statute.

The Board is of the opinion that petitioner was not during 1918 and 1919, a personal service corporation for the reason that it did not meet the first three requirements of the statute, which are above enumerated.

It seems clear to us that petitioner's income, instead of being ascribed primarily to the activities of Harvey, was ascribable primarily and directly to the royalties received from the Detroit Co. It is true that Harvey rendered some service during the years in question both to the Detroit Co. and to the Frost Co. which service might in some degree have been reflected in increased royalties due to greater sales. Harvey's connection with the income of petitioner would, it seems, be remote and it may be pointed out, that no attempt was made to show the volume of increased sales, and, consequently, royalties, attributable to Harvey's services in 1918 and 1919 in making estimates, plans, blueprints, etc., and in providing collateral attachments.

The method of manufacturing the springs has been practically stabilized since the invention of the " stop " device in 1906. The Detroit Co. manufactured under the two basic patents belonging to petitioner and under the " stop " patent which was not assigned but of which, ever since 1906, petitioner has had the beneficial use. A patent is property and in this case the property was acquired in and before 1906. We are of the opinion, therefore, that the petitioner's income was derived primarily from property acquired long before the years in question.

While it is unnecessary for us, in order to dispose of the issue presented, to discuss the other requirements of the statute in relation to the facts herein, we believe that it would not be improper to do so in view of the fact that it is our opinion that petitioner failed to meet them.

Harvey, during 1918 and 1919, owned 649 shares of petitioner's capital stock of 1,000 shares, or 64.9 per cent thereof. The remaining stock was held by several persons among whom was Fairchild who owned 40 shares. Fairchild was secretary and a director of petitioner and he gave a little attention to its business. None of the other stockholders gave any attention to the business. Under such circumstances, we believe that the principal stockholders were not regularly engaged in the active conduct of the business.

The petitioner argues, however, that only the *principal stockholder* need be actively engaged in the conduct of the business. With this we can not agree.

The Board has heretofore held that a corporation was not entitled to personal service classification where the principal stockholders were not regularly engaged in its affairs. *C. W. Simpson Co., Inc.,* 1 B. T. A. 995; *G. F. Cotter Supply Co.,* 1 B. T. A. 1108. The court in *Matteson Co.* v. *Willcuts,* 12 Fed. (2d) 447, said with respect to principal owners or stockholders engaged in the conduct of a corporation claiming personal service classification:

It is not necessary under the law that each stockholder shall be engaged in rendering the personal service, but the letter and spirit of the law both require that the great body of the stock shall be in the hands of those who are rendering this service.

The United States Circuit Court of Appeals for the Fifth Circuit, in the case of *Harry S. Kaufman, Limited,* v. *Commissioner of Internal Revenue,* 24 Fed. (2d) 44, in holding that the petitioner therein was a personal service corporation stated:

It follows that Mayer should be included among the active stockholders. When he is so included, it appears that the stockholders owning more than 80 per cent. of the capital stock were regularly and actively engaged in the conduct of petitioner's business. In our opinion, the percentage of stock so represented was large enough to constitute the owners thereof the principal stockholders.

It is clear that the holding of that court is consistent with the holding in the *Matteson* case. In the *Kaufman* case the court merely found a percentage which it considered to constitute the principal stockholdings.

As above-stated, the Board is of the opinion that the principal stockholders of petitioner were not engaged in the regular conduct of its business and we must hold that petitioner fails to meet the statutory test in this respect.

The last point to be considered is whether capital is an income-producing factor.

The original patents were owned by petitioner, having been assigned to it by Harvey in exchange for stock. It is true that the "stop" patent was not assigned to it but nevertheless petitioner had the beneficial use thereof in that it received royalties from the Detroit Co. which manufactured the springs under the basic patents and the "stop" patent. Without the basic patents the "stop" device was of little value. Each was dependent upon the other. We can not say, therefore, that the patents which petitioner actually owned were worthless. And, as evidence of the fact that petitioner did not so consider them, it will be observed that they were valued at $99,800 and depreciation thereon was claimed for 1918 and 1919.

The Board is of the opinion that the patents owned by petitioner were important capital elements and were material factors in producing profits in the years in question. *Scheffler Hair Colorine Co.*, *supra; American Compounding Co.*, 2 B. T. A. 46.

From the foregoing it is evident that petitioner was not a personal service corporation during the years 1918 and 1919.

*Judgment will be entered for the respondent.*